Filed 8/19/24  P. v. Mendez CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

THE PEOPLE,

    Plaintiff and Respondent,

v.

DAVID MENDEZ,

    Defendant and Appellant.

E081434

(Super.Ct.No. FWV1303835)

OPINION

APPEAL from the Superior Court of San Bernardino County.  Mary E. Fuller, Judge.  (Retired judge of the San Bernardino Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Assistant Attorney General, and Christopher P. Beesley and Michael D. Butera, Deputy Attorneys General, for Plaintiff and Respondent.

1

In 2015 a jury convicted David Mendez of murder and robbery. In 2022 Mendez petitioned under Penal Code section 1172.6[1] alleging he could not be convicted of murder under current law and seeking resentencing. After an evidentiary hearing, the court denied the petition, finding Mendez was guilty of murder as a major participant in the underlying crime who acted with reckless indifference to human life. Mendez argues this finding was not supported by substantial evidence. We disagree and affirm.

BACKGROUND

Mendez was friends and coworkers with Jorge Cisneros, and the two frequently went to lunch together. Cisneros was known by coworkers to have an affinity for guns and violence. He sometimes showed coworkers pictures of guns and had magazines about guns. One coworker later testified that Cisneros acted threatening and "tried to fight me a couple times." This same coworker testified Cisneros "would carry a weapon and we were all just afraid that he might use it," and he had mentioned wanting to get into a gunfight. Cisneros brought a gun to work on at least one occasion. When a coworker reported that Cisneros had brought a gun, both Mendez and Cisneros threatened the coworker. Mendez's nickname for Cisneros was "Matone," which he testified was Spanish for "killer."

In November of that year Cisneros and Mendez left work for lunch. Instead of getting food, the two went to a check cashing and payday loan store. When Mendez and Cisneros arrived at the store, Cisneros showed Mendez that he had a gun. Mendez

---

[1] Unlabeled statutory citations are to the Penal Code.

2

testified that until that point he did not know they planned to rob the store, and when he expressed hesitation Cisneros threatened him with the gun. However, Mendez admitted Cisneros did not have the gun in his hand when the two entered the store, which surveillance footage shown to the jury confirmed.

The victim, an employee at the store, was the only person there when Cisneros and Mendez arrived. The victim was on the phone with a colleague when the two entered. Video footage shows Cisneros, who was not wearing a mask or any other clothing to conceal his identity, entering first. He held the door for a man wearing a mask, who Mendez later admitted was him. Cisneros proceeded towards the victim while Mendez stayed back. When Cisneros arrived at the victim's desk, he pulled a gun and fired it at her from a short distance. The colleague on the phone with the victim heard her scream and then heard a loud thump. The victim immediately fell off her chair and onto the floor, where she remained. At the same moment, Mendez sprinted from near the entrance of the store—well behind Cisneros—to behind the desk. Despite moving directly past the victim Mendez did not attempt to render any aid to her, and instead began rummaging through the desk drawers. After an initial scramble, Cisneros began pointing to drawers, directing Mendez to check or double-check them. The colleague on the phone heard two men speaking in Spanish, one saying, "[o]ver there. Over there," and the other responding "[t]here?" The victim was lying down behind the desk, still alive, while Mendez stepped around her to go through the drawers. Cisneros then exited the store ahead of Mendez, without looking back. Mendez sprinted to follow.

Cisneros and Mendez were in the store for just over 30 seconds. The victim could still be seen moving until the footage ended about 20 seconds after Mendez and Cisneros left. Cisneros and Mendez stole a total of $600. Mendez later admitted that he did not object to the shooting or attempt to render aid, but claimed this was because he was afraid of Cisneros.

The colleague on the phone called the police, who arrived shortly afterward. When police arrived the victim was unresponsive, and she was pronounced dead at the hospital.

Mendez and Cisneros returned to work after the killing. After work, Mendez bought pizza and took it home to his family.

The San Bernardino County District Attorney charged Mendez with murder (§ 187, subd. (a)) and robbery (§ 211). They also alleged the special circumstance that the murder was committed in the course of a robbery. (§ 190.2, subd. (a)(17).) In 2015 a jury convicted Mendez on both counts and found the special circumstance true.

In 2022 Mendez petitioned under what is now section 1172.6. The court issued an order to show cause and held an evidentiary hearing. The parties submitted the reporter's transcript from Mendez's appeal from his conviction, as well as the surveillance video footage. After reviewing this evidence and hearing argument, the court denied Mendez's petition, concluding he was a major participant in the robbery who acted with reckless indifference to human life. The court found Mendez's claim that he was forced to participate unconvincing, highlighting several discrepancies between Mendez's testimony

4

and the surveillance footage. Specifically, Mendez said Cisneros was pointing the gun at him while the two were at the door of the store "[b]ut . . . there is no indication of that on the video." In addition, Mendez "testified that he went into the business first with Cisneros behind him," but the video showed Cisneros entering first. The court also provided a detailed analysis of the factors regarding major participation and reckless indifference to human life, finding—among other things—that Mendez knew Cisneros was "preoccupied with guns and killing," knew Cisneros actually had a gun, acted without hesitation once Cisneros fired at the victim, did not try to warn the victim, and did not otherwise attempt to aid the victim at all.

## DISCUSSION

Mendez argues there was insufficient evidence for the judge to find either that he was a major participant in the robbery or that he acted with reckless indifference to human life, and therefore he is entitled to be resentenced under section 1172.6.

In 2018, the Legislature passed Senate Bill No. 1437 (Senate Bill 1437), effective January 1, 2019, which among other things, amended the definition of felony-murder in section 189. This amended felony-murder rule restricted culpability for murder to actual killers, aiders and abettors, and anyone who was "a major participant in the underlying felony and acted with reckless indifference to human life" unless the victim was a peace officer. (§ 189, subd. (e)(1)-(3), (f).) Senate Bill 1437 also added what is now section 1172.6, which allows "[a] person convicted of felony murder or murder under the natural and probable consequences doctrine," to "file a petition with the court that

5

sentenced the petitioner to have the petitioner's murder . . . conviction vacated and to be resentenced on any remaining counts," if, among other things, "[t]he petitioner could not presently be convicted of murder" (§ 1172.6, subd. (a)), because of the changes to the law wrought by Senate Bill 1437.  (§ 1172.6, subd. (a)(3).)  If the petition makes a prima facie case for relief, the court must hold an evidentiary hearing.  At this hearing, the People have the burden to prove beyond a reasonable doubt that the petitioner is guilty of murder under the law as it exists now, with the trial judge sitting as factfinder.  (§ 1172.6, subds. (b), (d)(3).)

In *People v. Banks* (2015) 61 Cal.4th 788, 798 (*Banks*), our Supreme Court defined " 'major participant' " in an underlying felony, while in *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), it addressed how to determine whether a defendant acted with "reckless indifference to human life."  (*Id*. at pp. 614-623.)

The factors relevant to assessing whether a defendant was a major participant in an underlying felony, set out in *Banks*, are:  "What role did the defendant have in planning the criminal enterprise that led to one or more deaths?  What role did the defendant have in supplying or using lethal weapons?  What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants?  Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death?" and "[w]hat did the defendant do after lethal force was used?"  (*Banks*, *supra*, 61 Cal.4th at p. 803.)  The court emphasized that no one

6

factor was determinative but that "[a]ll may be weighed in determining the ultimate question, whether the defendant's participation 'in criminal activities known to carry a grave risk of death' [citation] was sufficiently significant to be considered 'major.' " (*Id.* at p. 803.)

In *Clark*, the Court summarized the necessary state of mental culpability for reckless indifference to human life as "encompass[ing] a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions." (*Clark*, *supra*, 63 Cal.4th at p. 617.) The court cited the Model Penal Code's definition of recklessness approvingly, which requires a person " 'consciously disregard[] a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation.' " (*Clark*, at p. 617.) "This definition encompasses both subjective and objective elements. The subjective element is the defendant's conscious disregard of risks known to him or her. But recklessness is not determined merely by reference to a defendant's subjective feeling that he or she is engaging in risky activities. Rather, recklessness is also determined by an objective standard, namely what 'a law-abiding person would observe in the actor's situation.' " (*Ibid.*)

In *Clark*, the Court offered a list of nonexclusive factors to consider in determining whether a defendant acted with reckless indifference to human life. These factors are (1) the defendant's "[k]nowledge of [w]eapons, and [u]se and [n]umber of [w]eapons"; (2) their "[p]hysical [p]resence at the [c]rime and [o]pportunities to [r]estrain the [c]rime and/or [a]id the [v]ictim"; (3) the "[d]uration of the [f]elony" (italics omitted); (4) the defendant's knowledge of the likelihood his cohorts will kill; and (5) their efforts to minimize the risks of violence during the felony. (*Clark*, *supra*, 63 Cal.4th at pp. 618-621.) The Court emphasized that, as with the *Banks* factors, " '[n]o one of these considerations is necessary, nor is any one of them necessarily sufficient.' " (*Clark*, at p. 618.)

While the trial judge must consider the evidence under a reasonable doubt standard, we review the trial judge's factual findings for substantial evidence. (*People v. Clements* (2022) 75 Cal.App.5th 276, 298.) Under this standard "[w]e ' "examine the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value that would support a rational trier of fact in finding [the defendant guilty] beyond a reasonable doubt." ' " (*Ibid.*) We view the evidence in a light most favorable to the judgment and "presume ' " 'every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence.' " ' " (*People v. Hill* (2024) 100 Cal.App.5th 1055, 1066.) "We will not reverse unless there is no hypothesis upon which sufficient substantial

evidence exists to support the trial court's decision." (*People v. Didyavong* (2023) 90 Cal.App.5th 85, 97.)

We find there was substantial evidence to support the trial court's finding that Mendez was a major participant in the robbery who acted with reckless indifference to human life.

There is little question Mendez was a major participant in the robbery. Even accepting as true that Mendez did not know Cisneros planned to rob the store, the surveillance video shows Mendez fully cooperating. Indeed, Mendez was the only person who personally stole anything. He rummaged through the drawers, presumably looking for whatever he could take. Cisneros directed Mendez's theft, but Mendez took the goods. There was also evidence that Mendez did, in fact, play some role in planning the crime. The surveillance footage shows Mendez reacted immediately to the shooting, sprinting to open the drawers behind the counter before the victim's body had even hit the floor. Once there, Cisneros did not have to direct him much nor explain what he should be looking for, merely pointing at drawers. The trial judge could have reasonably concluded this indicated some level of pre-planning or at least understanding between Cisneros and Mendez. Mendez also knew Cisneros was a hothead who was often armed and had expressed some violent tendencies prior to this date. He knew Cisneros was armed before the robbery commenced. Though Mendez was not physically next to Cisneros when Cisneros pulled the trigger, he could have attempted to stop or stall Cisneros at any point before the shooting, or even just warn the victim. But he did none

9

of these things. Finally, Mendez's actions after the death showed no remorse nor concern for the victim. Mendez did not attempt to render aid, report the shooting, or report that there was a victim in need of aid. Thus, there is at least some evidence to satisfy all or nearly all of the *Banks* factors, and therefore plenty to conclude Mendez was a major participant.

There is also sufficient evidence to find Mendez acted with reckless indifference to human life. The requirements to be a major participant " 'significantly overlap' " with those required to show reckless indifference to human life because " 'the greater the defendant's participation in the felony murder, the more likely that he acted with reckless indifference to human life.' " (*Clark*, *supra*, 63 Cal.4th at p. 615.) As noted above, Mendez knew Cisneros had a gun and planned to use it. He was also able to restrain Cisneros and made no effort to do so or to otherwise minimize the risks of violence. Perhaps most importantly, Mendez made absolutely no effort to aid the victim. He did not try to warn her Cisneros had a gun. He did not try to render aid. To the contrary, Mendez had to move around the victim's body as she lay dying to steal from the drawers. Mendez had no way of knowing that the victim would not live much longer, and the surveillance footage shows she was still alive when he left. Despite this, he did not call for medical aid or for police, even anonymously.

The only factor in Mendez's favor is that the crime was short, and Cisneros killed the victim without warning and within seconds of them entering the store. Because of this, Mendez's opportunities to prevent violence were fleeting, and he may have been

genuinely shocked when Cisneros shot the victim.  Nevertheless, Mendez's actions thereafter were " 'a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation,' " and were sufficient for the trial court to find he acted with reckless indifference to human life.  (*Clark*, *supra*, 63 Cal.4th at p. 617.)

Accordingly, we affirm the trial court's order denying Mendez's petition under section 1172.6.

## DISPOSITION

We affirm.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL
J.

We concur:


MILLER
Acting P. J.

MENETREZ
J.

11